Good morning, and may it please the Court, my name is Michelle Moretti for Appellant Damien Zepeda. At the time of the offense, Mr. Zepeda was a 23-year-old man with no prior federal or felony offenses, yet he received a sentence of 1,083 months, virtually 90 years, a life sentence for his convictions below. As serious as they were, fortunately, no one was killed. There was an injury, but one injury. The first issue addressed in the brief is that Damien's confrontation rights were violated when the government introduced testimonial evidence in violation of Melendez-Diaz and Bullcumming v. New Mexico's rule that prohibits second-party affiance. Those two items of evidence were admitted by stipulation, correct? Yes. The evidence was admitted by stipulation. However, that is not dispositive, because there's a presumption against the waiver of constitutional rights.   rights. I'm not sure of the importance of the presumption. And there was no other. I mean, we reviewed your plein air, correct? Excuse me? Plein air review. Yes. Yes, Your Honor. I believe so. But there is a presumption against the waiver of constitutional rights, and any waiver must be made knowingly and voluntarily. Now, counsel can do waivers on all kinds of constitutional rights. Your Honor. There's absolutely no rule that says counsel cannot stipulate interstitulations, et cetera. And indeed, there are cases in the Sixth Amendment area where exactly that's done. Well, according to the cases cited in the brief, there's actually a circuit split as to whether certain fundamental rights may be waived by counsel. It is a live issue. A Ninth Circuit split or a split intracircuit? An intracircuit split. And the split is whether they may waive a client's confrontation rights without the clear and express waiver of the defendant. I guess while I was a trial judge, I don't know how many times I admitted evidence like this pursuant to the stipulation of the parties, and it never once occurred to me that counsel couldn't do that. Well, we've had a significant amount of case law that has come down, which now ---- I guess that just shows that I guess I'm getting, definitely getting old. I mean, it's been many years since I was a trial judge. Assuming you didn't win that one, where do we go from there? Well, this circuit has only addressed whether non-fundamental constitutional rights may be waived, and it's held that it must be a legitimate strategy and ---- Why don't we assume that we disagree with you on this particular issue? What's your next argument? What's the next issue you would have that you think is so critical, where the district court erred, that would merit reversal? Well, I ---- You failed to give the instruction on ---- failed to give a voluntary intoxication instruction? Yes, but I would ---- Or the vouching that took place? Yes. I would just mention, as it tagged the first argument, despite the Court's proclivity, that ---- You might take a hint. The trial court failed to satisfy an essential jurisdictional element of the defendant's Indian status for a conviction. There's a prescribed Bruce ---- United States v. Bruce test. Well, that's a different argument, isn't it? That's not the first argument. But it's part of the same argument in terms of the prejudice that would have inured to the defendant if the stipulation was considered having been wrongly waived. There was prejudice, and there was an insufficient ---- Well, what if it wasn't wrongly waived? There was ---- There would have been non-homicide. I know you don't want to take any hints from the bench, but you can spend your whole time talking about whether it was wrongly waived or not. That's okay with us, but maybe you'd like to argue some other issue also. If you'd rather just argue wrongly waived, that's fine. Go ahead. I just wanted to call attention to that. But your second point about whether the evidence was sufficient has nothing to do exactly with whether that was wrongly waived or not. And the evidence in any event was insufficient. The law prescribes a particular test to be satisfied, to satisfy this essential jurisdictional element. Otherwise, Indian status can be assumed, and one creates a dragnet by which many people are subject to this draconian Federal prosecutions and 924C firearm charges simply because it's alleged that they were Indian. And in this case, no such evidence, no sufficient evidence was presented. And that was plain error. When ---- Can I ask you this? So assume that the tribal enrollment certificate properly came into evidence, right? Yes. Why isn't that combined with the testimony about the defendant's father sufficient under the test in Bruce? Well, the test requires a blood and ancestral connection and a sufficient affiliation with a Federally recognized tribe. And there are four factors that are to be considered in that second Federal affiliation test. Was any evidence put in that either one-fourth Pima, one-fourth Tohono O'odham, or for that matter, the Eeler River Indian community, are Federally recognized tribes as such? There was not. There was no evidence as to the Federally recognized or Federal recognition of the tribe, absolutely. And that's been held to be reversible error in terms of satisfying the jurisdictional elements in this case. And I would please urge the Court to pay attention to the research that I did in my brief. Can I ask you this? Are any of those tribes Federally recognized in fact? I believe one of the tribes may be, yes, may be Federally recognized. So if that's true, in fact, how is it plain error? How are your defendant's substantial rights violated if we affirm on that? Because it's more than one element of Federal recognition. There must be a recognition of government assistance of benefits reserved to tribal Indians, enjoyment of tribal benefits, and social recognition as an Indian for residence on the reservation and participation. Those are the four factors. But I don't know, do we have cases that say you have to meet every single one of them in order to satisfy it? Yes. Your Honor, I would suggest that in the brief I've explained, there are cases that have addressed these factors and have held it error to refuse to or fail to instruct the jury in the declining importance of those four factors. But let me – what I'm stuck on, just to be frank with you, is that I don't see any of our cases in which a tribal enrollment certificate was admitted and there was no contrary evidence, no evidence to undermine the validity of that. I don't see any of our cases saying that that alone isn't sufficient to satisfy that second group of the Bruce factors. Your Honor, I believe that this issue is probably one that's glossed over and taken for granted, and I would ask that the Court pay particular attention that – to the fact that we do have a case law in the Ninth Circuit that prescribes the statutory elements for finding this element. And I – it appears that it's simply not being followed and not being considered. We do have Bruce, we have Cruz, we have United States v. Magi. And that was a 2010 case. It appears that this may be an evolving area of the law, but it does encompass a large class of people who are being affected by these laws and may possibly not even be jurisdictionally subject to them. Is the standard – is the standard, in your view, plain error when the challenge is insufficient evidence to support the verdict? The challenge – the challenge, if I understand it, you're making is insufficient evidence to support the verdict. Is that a plain error standard? Yes, in – well, I would – Is it a plain error standard in your view? Okay. Plain error requires reversal. It was not brought up before, so I would assume the plain error standard applies. It requires reversal because pervasive prejudice results where a stipulation essentially establishes the elements of the crime and a conviction which rests on insufficient evidence is a violation of substantial rights in accordance with the United States v. Cruz. And that's precisely what occurred in this case, because there was not sufficient evidence to determine the defendant's Indian status in accordance with established law. I mean, I'm just – I'm puzzled as to why you don't think the tribal enrollment certificate, why isn't that sufficient if there's no counter evidence to that? Just from a policy standpoint, you argue that somehow we should revisit this issue. There is a – But why wouldn't that be sufficient if the defendant doesn't contest that certificate? Why isn't that enough to show that the person really does have a sufficient affiliation with a tribe? The case law holds that a tribal enrollment certificate is, in itself, is never sufficient to establish. Which case holds that? And it is in the brief. Are you talking about the dicta from Cruz? Because Cruz certainly doesn't hold that. In Cruz, the defendant wasn't enrolled. That was the whole issue there. In Cruz, the court states, although tribal enrollment is the most important factor, enrollment is not dispositive of Indian status. If a defendant perhaps contested the legitimacy of the enrollment certificate or some counter evidence. But I'm just saying, in your case, the jury was presented with the tribal enrollment certificate, nothing on the other side of the balance. And I'm just – if you have a case in which we've said that that state of the evidence is not sufficient, I would love to hear it. But I didn't see it, any case, any such case cited in your brief. I would just again refer to the Court's collective writings in Bruce and Cruz in Magi, which suggest that it is required that all of these factors be touched upon, regardless of whether the defendant contests any evidence, because it's not the defendant's burden to prove an essential element of the crime. It is the government's burden, and the government must come forth and bring forth evidence that touches on all of the factors. And perhaps if there's no existing case law, there may be some after this argument, if I may proceed to the intoxication argument. Again, this is a case where plain error affected the defendant's substantial rights. There is substantial evidence of a defendant's intoxication that was introduced at the time of the trial. It was introduced through both parties. The defendant had clearly been drinking and smoking pot. He had been smoking pot since 3 p.m. that day. Breyer, what was the defense theory that was argued at the time? The defense theory was that there was no conspiracy intent or plan, and that these things happened by happenstance. The ---- I thought there was a self-defense kind of theory. That was one of the affirmative defenses touched on. And that none of the other witnesses could be believed. That's a synopsis that the government posits of the defense. But actually, the fact showed up. When I read the closing argument, I kind of thought that's what they were arguing. That was a point that was made, but a defendant was going to see his girlfriend who had just gotten out of prison. She was a convicted ---- she was in the presence of a convicted felon, a five-time adult felon, who was potentially very dangerous. And although the defendant himself denied that he had a gun, it's clear that Matthew, his brother, stated that he had a gun. So assuming that the jury could have disregarded the defendant's defense, they could have ---- they could have believed that they both had guns, but they may have believed that they had guns for legitimate purposes of simply self-defense. It's not illegal to carry a gun without having the requisite specific intent to commit the crimes as charged, which all required specific intent. So the fact that he ---- his defense was that he didn't have a gun was not dispositive. The jury could have disbelieved or believed an alternative. Breyer. What's your best case that says that the district court judge must sua sponte on his or her own give a voluntary instruction to the jury when it's not requested? There have been cases that allow a sua sponte instruction where it is relevant to the evidence of an essential element of a crime particularly. And they're cited in the brief. However, they have to do with cases sometimes where the defendant has not requested or has objected to the evidence, and it is not something that's widely done, but it has occurred. But the touchstone seems to be whether the jury should be instructed that they may consider evidence of a voluntary intoxication when evaluating the defendant's mental state. And in this case, it wasn't the defense that raised this. It was the prosecution that stressed this in ---- especially in its closing argument. And the prosecution seemed to suggest that intoxication supplied the requisite intent for the convictions, and the language is cited in the brief. But don't you need some evidence that intoxicated or not, that the intoxication was sufficiently intoxicating to preclude his forming a specific intent? I mean, lots of folks are intoxicated, and you know there are cases that say, well, maybe the guy was intoxicated, but there's really not evidence that he was incapable of forming a specific intent. What do you do with that? Well, the case law, especially Sneezer, and the case cited in the brief, clearly states that a jury may find the level of ---- whether the level of intoxication sufficiently affected the defendant. That's a finding for the jury based on the factual evidence at trial. There's no need for expert testimony. The evidence, the instruction may be given even if the evidence is only slight. And in this case, the evidence was not only slight, it was overwhelming. All of the men had been ingesting substances for hours before, and where the government actually linked to that and suggested it supplied the requisite intent for these crimes that required specific intent. An instruction, sua sponte, was even more warranted in terms of fairness to the defendant. It was a denial of his due process rights for it not to have been given. And I would just cite Montana v. Eaglehoff. And although that case was ---- doesn't stand for the proposition that it must be given, it suggests that it may be a violation of a defendant's due process rights when the evidence was instructed as to an essential element of the crime. And again, this is an area that would need, you know, further judicial explication, I'm sure. But in this case, particularly where the government brought up the evidence, the instruction was required. And I would cite to United States v. Kenyon. I'm just sure ---- Roberts, would you like to save some time for rebuttal? Yes, Your Honor. You have about two minutes. Let me just ask you straight off about the sufficiency of the evidence on Federal recognition of the various tribes. Do you agree that there was no such evidence to introduce a trial? Joan Rufnack, appearing on behalf of the United States. No, I do not agree that there was insufficient evidence. In the cases that have been cited, all of those defendants were not enrolled members of the Indian tribe. Hang on. Just before you get there, just back up one step. Okay. Federal recognition. Oh, Federal recognition. Was there evidence of any of these tribes that have been referenced that they were Federally recognized?  It's a legal issue for the court. And each of those ---- Yes, but the court wasn't given any evidence either, was it? No. Because the issue wasn't raised. But the ---- Sure. But, you know, we do have a case involving bank robbers and the FDIC. Correct. Where there was a stipulation that didn't happen to get put into evidence, but everybody had stipulated to it, but it wasn't in evidence. And we said, you know, you didn't ask ---- you might have asked for judicial notice, but you didn't ask for it in front of the jury, you didn't ask for it from the court. There just is no evidence that this bank was insured by the FDIC. Where is the evidence that one-fourth Pima or one-fourth Tohono O'odham is specifying blood derived from a Federally recognized tribe? Where is the evidence? The evidence is the stipulated certificate of enrollment. They just stipulated the certificate. Now, where is the rest of the evidence? Correct. Then at that point, it becomes a legal issue for the court as to whether or not those tribes are Federally recognized. And ---- Which we think in our law it says it's strictly a legal issue. But let's say ---- let's say it is. The court didn't have any evidence from which you could draw that conclusion, did it? I guess I'm confused, because if it's a legal issue, the court was sitting in the District of Arizona. Each of these tribes is within the District of Arizona, their reservations. And the court has been a practicing judge for a significant period of time, and these cases have been presented. And so the court would have knowledge, common knowledge. I'm sorry. We have cases ---- we have cases that say a court can't rely on judicial notice. It's an evidentiary question. A court can't just say, oh, well, I know ---- I know that there are streets in Phoenix that are, say, 50 miles an hour. It can't do that. It's got to be in evidence somehow. Even if the court puts it in evidence, which is very questionable. Furthermore, how does a court know that one-fourth Pima is a federally recognized tribe? You know, we have this interesting case, was it Medjie? I forget which one it was, where the person was derived from the XYZ, what was it, tribe, and the court said, you know, we don't know that that ---- it might have the Y in it, for example, or it might have XYZ in it, but that doesn't tell us that it's a federally recognized tribe. Let me do that. The BIA publishes in the Federal Register a listing of federally recognized tribes. And the BIA does not say that ---- does not have a tribe just called Pima. The Pima Maricopa. And the Gila River Indian community is a recognized tribe, as is the Tohon O'odham. Yes. And there are no Pimas except that one tribe. There are no non-federally recognized Pima Indians, you're telling me? And the court knows that by judicial notice, too? I'm saying that the Gila River tribe issued a certificate saying this individual, Damien Zepeda, is a federally ---- is a member of the Gila River Indian tribe. The Gila River Indian tribe is a federally recognized tribe under the BIA listing of federally recognized tribe, as is the Tohon O'odham tribe. I understand that the Gila River community is indeed, if you look at the Federal Register, a federally recognized tribe. No question about that. There is no federally recognized tribe simply called Pima or Tohon O'odham. There are some Pima federally recognized. There is a Pima federally recognized tribe. But this doesn't tell us that he's a member of that, a bloodline of that particular tribe, does it? I guess I disagree with the court with regard to the Tohon O'odham. When I checked the Federal Register the other day, Tohon O'odham is a specifically recognized tribe. And so maybe I'm not understanding. So you want us to take judicial notice? Suppose I said Cherokee. I think that was the case in question. Cherokee. The person says, I'm Cherokee, I'm a Cherokee, and let's say he is a Cherokee. But there are federally recognized Cherokee tribes. But that doesn't mean he's a member of a federally recognized Cherokee tribe just because he's got Cherokee blood. It doesn't say that, does it? But the certificate says, we, the Gila River Indian community, recognize Damien Cepeda with this particular date of birth as a member of our tribe. Yes, it does. Because he has this bloodline. And the Gila River Indian tribe is a federally recognized tribe. Yes, but the fact that it says that doesn't take care of the bloodline. It's a separate test. Isn't that right? There are two tests. One is bloodline. The second is recognize the member of the tribe. Correct? There are two tests. You're talking about the tests under Bruce. Yeah, I believe, yes. Two tests. One is, is your blood in fact federally recognized Indian blood? The other is, for example, are you, have you been recognized by a federally recognized tribe? That's a separate test. I'm talking about the blood test. Where's the evidence that his blood is federally recognized Indian blood when all you put down is Gila? Now, I'm not saying it isn't, but I'm saying, where's the evidence? This is an evidence question, I think. I guess, again, it comes back down to the certificate. And had it been challenged, then there would have been additional evidence. This was raised in the reply brief. But you know what? In terms of that, the question is sufficiency of the evidence, isn't it? You know, we talked about plain error review and things like that. If ultimately the evidence is insufficient to support the verdict, I think that's just plain constitutional error. And we don't, I don't know that we talk about plain error review about that, if the evidence will not support the verdict. And this is the sum total of the evidence. You agree to that? No, because there was also the evidence from his brother's testimony. And his brother testified, Matthew Zepeda testified that I'm his brother, we both have the same father, and we are both half Native American. That doesn't get you anywhere. You can be half Native American. You can be half Native American and still not have recognized Indian tribe blood. Recognized. But no case has said that a tribal certificate, an enrollment, a certified tribal enrollment certificate indicating that an individual is an enrolled member of an Indian tribe is insufficient to establish Indian status. Sure it has, because you've got to take care of the other factor. There are two factors, and they're separate. One is Indian blood. Let's say an Indian tribe decides to adopt me as its member. I promise you I'm not Native American. Decides it's going to, for whatever reason, because I'm such a great person or whatever it is, they're going to make me a member of the tribe. And so they recognize me as a member of their Indian community. Let's say they do that. Is that enough to meet the test, in your view? No, not if there's not an Indian blood line. Because I don't have federally recognized Indian blood, correct? Correct. Okay. And that's my question. How do I know when you put down one-fourth PEMA that is federally recognized Indian blood? How do I know that? Perhaps PEMA may be disputable if there are additional PEMAs out there. The PEMAs that we're familiar with in Arizona are the PEMA Maricopa Indian tribe, which is a recognized tribe on the Federal Register. The other tribe indicates Tohono O'odham. Tohono O'odham are also in the District of Arizona. That's where their reservation is. And they are a federally recognized tribe. So by submitting a certificate that says, this is the bloodline, and we recognize this I can understand your argument. Can you just back up? You said earlier that the question of Federal recognition, whether the particular tribe at issue is federally recognized or not, is a legal question for the judge. What's the authority for that? What's the case? I don't know. There's not – well, I can tell the Court that this issue has been – is percolating, and I know that there are briefs on the issue. As the Court is aware, this was raised in the reply brief, and so the government did not brief it in this case. If you would like to have it briefed, I'm certainly willing to do that. But I can tell the Court that there are other cases that are currently pending. In fact, one was argued in June with dealing specifically with whether or not it's federally recognized, because it is the position of the government that because there are these lists published, it has to be an issue of law, because otherwise you will have juries deciding whether or not, for example, when the Gila River Indian tribe certifies that someone is a member of that tribe, that the Gila River Indian tribe is not a recognized tribe and, therefore, they can't issue these kind of certificates, whereas it just doesn't make sense to make that a jury issue, because it could come down one way in one case, one way or another, when, in fact, Federal recognition is very specific. It's granted by the government so that those tribes can obtain benefits from the Federal government. And so Federal recognition shouldn't be something that's at the whim of a jury verdict. FDIC insurance is very specific, too, right? But FDIC insurance is – I see that as different as opposed to a sovereign tribe saying that this particular person is a member of our tribe. Okay. With regard to the voluntary intoxication instruction, as the Court has already noted, it wasn't requested instruction, and it's the government's position that that was a strategic choice in this case. It was a strategic choice because defense counsel recognized that defendant was going to testify, and he alluded to that fact in his opening statement when he said that, I suggest to you that you're going to hear that the defendant is not the one who had the gun, that, in fact, it was Dallas Peters who had the gun. The defendant portrayed himself as someone who was calm, cool, and collected, who went to the home of Dallas Peters solely with the purpose of having a calm discussion with his girlfriend to try and get her away from the home. In that regard, the defendant testified that he had a single 12-ounce bottle of beer sometime between 6.30 and 9.30 at night, and that he may have smoked – and that he did smoke some marijuana. But there was no testimony of an actual intoxication, and this Court has said that there's difference – there's a difference between evidence of drinking and evidence of intoxication. In this case, there was evidence of drinking, there was evidence of marijuana, but it was primarily evidence with regard to the brothers, Matthew and Jeremy, as opposed to the defendant. And again, when the defense – when it makes a strategic choice to prevent – present the defense of self-defense as opposed to intoxication and builds its case around that, it was not sua sponte plain error for the district court not to have given that instruction. Can I jump ahead to a different issue that's bothered me on the sentencing? Sure. Assuming we get there. For counts 2 and 4, where the victim is, I think, is it Dallas Peters? Is that the gentleman's name? I guess I have some concern about the stacking of the 2924C counts for the same victim and where potentially the same gun was used, because as I read the record, there wasn't anything that required the jury in deciding guilt on those two counts to decide that a different gun was used in perpetrating those two crimes. Am I off somewhere in that thinking? I don't think you're off, but I've considered this issue, and I believe because the jury found with regard to each of the 924Cs that there was a discharge of the weapon, and with regard to Dallas Peters, there was clear evidence that he was injured, which, granted, inflicted more serious wounds. He still was covered in shotgun pellets from his ears down to his knees. And so the jury was urged to find that 924C on the basis of the defendant having aided and abetted Matthew, who indisputably is the one that shot the shotgun. So they were asked to find that the defendant, as an aider and abetter, caused the 924C that of the shotgun pellets in two. Okay. I understand that may be what the government argued, but I didn't see anything in the jury's instructions or the jury verdict form that required the jury to find that a different gun was used for one of those two counts. And I do recall that. That was not part of the special jury verdict. No, it was not. Okay. I do recall testimony, but tell me if I'm wrong on this, that the defendant shot with a 9-millimeter, shot at Dallas Peters, missed him. Am I – is there some testimony to the fact that he might have perpetrated the assault with a 9-millimeter by shooting at Dallas Peters and missing him, and then subsequently shooting him and causing a serious bodily injury? That's what I'm confused about. I thought there was a basis for the jury to say, you're guilty on both counts 2 and 4, you, Mr. Zepeda, for using a 9-millimeter on both counts. There was testimony that bullets passed by his ear, and he, in fact, had an injury to his ear. So I guess theoretically, they also could have found it by that shot in addition to – because I've – but I don't believe – I mean, it was – it wasn't specifically instructed as the Court is inquiring. But because the jury was guided by the arguments, it's more likely that what the jury found was two separate guns committed – caused injury. Both of them caused serious injury, and therefore, the 924Cs attached to those different guns. Okay. But let's just – as a legal matter, if it were the same gun, same victim, do you agree that you can't stack 924C counts in that scenario? Same gun, same victim, no, I don't think you can. Okay. But that would only undo one 924C, which would be. Yeah, I understand. And I'm prepared to argue with regard to the testimony regarding Matthew. I know – oh, I do still have time. It's the government's position that Jeremy's testimony was not vouched. Jeremy, the only thing that he testified to with regard to his plea agreement in direct was that he pled guilty to an offense and got three years, and he's testifying because he hopes that that three-year sentence will be reduced. Otherwise, there was no testimony on direct with regard to anything about testimony, much less truthful testimony. With regard to Matthew, that was a different story because Matthew was impeached or there was an attempt to impeach him on his direct examination. The district court called the sidebar. The district court said, I find that he's being very evasive. I think he's lying. He needs to get his lawyer here so that his lawyer can advise him with regard to lying. And the prosecutor said, I will go ahead and go over perjury with him and proceeded to do that. Even if this court finds that that evidence or that Matthew's testimony was improperly elicited or was erroneous, there's more than sufficient evidence outside of Matthew's testimony upon which the jury can convict on each and every count. And that's because you have a number of witnesses placing the gun in defendant's hands, the 9-millimeter. You have Jeremy placing the shotgun in Matthew's hands. You have Jeremy presenting or testifying to the fact that he knew something was going to be going on. He wasn't comfortable with it. He knew that guns were being brought to the house, that he tried to pull out because he realized once they got to the house that he knew the people that lived there and he didn't want to be involved because those people were related to his girlfriend and his daughter. So from his testimony, you have the prior planning. And from the testimony of the other witnesses, you have two gunmen. And from the physical evidence that was found in the scene, at the scene, in addition to the physical evidence that was found at the defendant's home, you have the guns that were used at the scene tied to the defendant. And if you take a look at the government's closing argument, you'll see that the government focused the government did misstate and the prosecutor did misstate in her closing argument with regard to doing dirt because Jeremy did not make that statement. But in any event, the focus of the government's argument was you had seven eyewitnesses in this case. They all presented testimony to you. And that evidence, I see my time is up. And I'll just have one question. Roberts. One last question. I want to skip back to the sufficiency argument. Okay. You – I think you argued in your brief that plain error review applies to the whole question about whether the tribe was federally recognized, whether there was sufficient evidence of his Indian status, right?  What's the authority for that? You've heard Judge Fernandez say that he disagrees with that. What's the authority you have for the proposition that plain error review applies to a sufficiency of the evidence claim in this – in this situation? You mean a case? I – I – That would be nice. I do. Am I wrong? I thought you argued in your brief that this error, this issue is subject to plain error review. And I'm just – what's the authority for that? And let me grab my brief. The government's – I'm sorry? Or maybe you didn't argue. No, I did. But that's because the – in the government's view, the reply brief recasts the argument, because in the opening brief it's, you didn't prove the sufficiency of this. And we said, yes, we did, because we have the stipulation. And we go from we have the stipulation to the pages in the reply brief that Cruz, Maggie, and Bruce say, no, you don't. But again, those were cases where the defendants were not Indians, and therefore the court found that there – so there wasn't a certificate of enrollment in the tribe. Okay. But did the defendant here, I assume, made a Rule 29 motion? He made a general Rule 29 motion without – and he didn't – he didn't specifically point to any element that was lacking in proof. I understand that. And that's what I'm trying to get at. Are you saying that if you don't specifically argue in your Rule 29 motion, hey, Judge, they haven't introduced sufficient evidence on my status as an Indian, that somehow on appeal it's subject to plain error review when you want to raise that argument? Well – He made a Rule 29 motion. He's now arguing if you look at this record, there is not enough evidence to convict me. I have to be acquitted. And I'll have – if I can find a case, I will submit it afterwards in a 28J letter, because it just makes sense that if you make just a generalized argument with no specificity as to what's missing, then the court can't make a determination of whether or not it's missing. I understand that it's the government's burden to bring forth the proof, but the government did that with the certificate of enrollment. Okay. Got it. Thank you. You had two minutes for rebuttal. Thank you, Your Honors. With regard to the certificate of enrollment, I'd like to point out that this is a jurisdictional issue at heart, and jurisdiction is one that can never be waived, and it may be raised at any time. So the Court may look at it in that respect also when evaluating the standard of review. Furthermore, with regard to the sufficiency of the evidence of Indian status, there was actually evidence contrary to the fact that defendant would have made – met the tests under the Bruce protocol. Damien's brother testified that he was a member of the tribe. He was Native American, and he was Damien's half-brother. But there were no – there was no testimony regarding sufficient ties to tribal life. In fact, Matthew didn't even know Damien's age difference. They didn't testify that they lived with the same father. They actually lived off the reservation for several years. And Damien's other brother, Jeremy, lived in Stanfield, Arizona, which was not affiliated with an American Indian, a Native American residence or tribe. And there was no evidence that Mr. Zepeda actually received any Federal tribal benefits from the Gila River Indian tribe. So I would suggest that that is evidence contravening a presumption that the mere certificate would establish his – his status as an Indian for jurisdictional purposes. And finally, just regarding briefly the evidence of doing dirt in the final arguments, that prosecutor's doing dirt was the clearest evidence of a defendant's malicious intent. It was not properly admitted. It was improperly brought forth by the prosecution and then echoed by the second prosecutor as specific evidence that the intended – the defendants did intend nefariously, and that this did not occur as a spontaneous explosion of panic and confusion. I would suggest that that is the most important piece of evidence, and it should not have been highlighted, and it was very prejudicial under the circumstances of the case where intent really is the crucial element of all of the charges. Thank you. Thank you.
judges: Fernandez, Paez, Watford